THE SWEET & CLARK COMPANY ET AL. *v.* THE UNION NATIONAL BANK OF TROY, NEW YORK.

149   305
159   555

[No. 18,404. Filed January 25, 1898.]

RECEIVERS.—*Appointment of, to Take Charge of Property in Hands of Assignee.—Rights of Mortgagee.—Rents and Profits During Year of Redemption.*—Where mortgaged property is insufficient security for the payment of the debt, a receiver may, at the instance of the mortgagee, be appointed to collect the rents and profits, or to operate the property during the year of redemption, either before or. after an assignment for the benefit of creditors.

From the Grant Superior Court.   *Affirmed.*

*John A. Kersey*, for appellants.

*W. A. Ketcham, H. J. Paulus, O. L. Cline*, and *F. E. Matson*, for appellee.

HOWARD, C. J.—The appellee brought its action to foreclose certain mortgages, and for the appointment of a receiver; and the appellants, the Sweet & Clark Company and John C. Tibbits, assignee of said com-

VOL. 149—20

pany, have taken this appeal from the order appointing the receiver.

One of the assignments of error is, that the complaint does not state facts sufficient to authorize the appointment of a receiver. The complaint shows the insolvency of the appellant company, and its mortgage indebtedness to appeleee in the sum of $17,500.00, which indebtedness, so far as its chief security is concerned, is subject to a prior mortgage debt in favor of the Marion Bank, amounting to $17,800.00; and that the mortgaged property is insufficient for the payment of the debts so secured. It is further made to appear from the complaint that the property so mortgaged, real and personal, consists of a manufacturing plant near the city of Marion, and that its value, to a large extent, depends upon its existence as a going concern; that if the factory should be shut down, the employes would be scattered, and the business injured, if not destroyed; and that it is therefore necessary for the security of this mortgagee that said property should be operated by a receiver, under the direction of the court, until the plant can be disposed of. It is also alleged that after the making of said mortgage to the Marion Bank, and after the making of the mortgages now held by the appellee, the appellant company, by, deed of voluntary assignment, conveyed to its co-appellant, Tibbits, as trustee for the creditors of said company, all of its property, including the property so covered by appellee's mortgages and by the prior mortgage to the Marion Bank, and that said assignee thereupon entered into possession of the property and upon his duties under the voluntary assignment statutes of the State; that, in the course of his administration, the assignee prepared a petition to the court, asking for permission to operate said plant, and secured the signature of a large number of the creditors of the

company who united in the petition, but that the petition was never presented to the court, notwithstanding which, the assignee, "without authority of law, and wrongfully," continued the operation of the factory, "and is now professing to operate the same, to the possible detriment of the creditors of said company."

It will not be questioned that so much of this complaint as precedes the references to the assignment would have constituted a sufficient application for the appointment of a receiver, in case the property had still remained in the possession of the original owner. Nor do we think that the allegations as to the assignment disclose any reason why the receiver should not be appointed. The appellee, on foreclosure of its mortgages, would certainly, under the circumstances stated, have had a right to the appointment of a receiver to secure the payment of its debt, subject, as it was, to the superior claim of the Marion Bank; and it is the law that an assignment for the benefit of creditors does not affect the rights of creditors who are secured by liens acquired prior to the assignment. 3 Am. and Eng. Ency. Law (2d ed.), 99 and 101, and cases cited. Indeed, our assignment statute itself (section 2911, Burns' R. S. 1894, 2674, R. S. 1881), provides that, before a lien-holder is entitled to share with the general creditors in any funds in the hands of an assignee, he shall first "proceed to enforce the payment of his debt by sale, or otherwise, of the property on which such lien or incumbrance exists." As to any balance of his debt left unpaid after foreclosure of his lien he may then share in the funds in the hands of the assignee. But if he may foreclose, and sell the mortgaged property, notwithstanding it may be included in the deed of assignment, it is clear, as in other cases, if it appears that the property is an insufficient secur-

ity for the payment of the debt, the mortgagor may ask for a receiver to collect the rents and profits, or, as in this case, to operate the concern, during the year for redemption. By virtue of his rights as mortgagee he could do this before the assignment, and his right and remedies are no less after the assignment. See *Gilbert* v. *McCorkle*, 110 Ind 215, and cases cited.

From the facts appearing in the exhibits to the complaint, and in the answer of the appellant, Tibbits, all of which are also made a part of the record by order of court, the propriety of the appointment of the receiver is made still more clear. The assignee admits the insolvency of the company, and the amount of the mortgage indebtedness, and its priority to the assignment; and that the real and personal property covered by the mortgages will be of more value if used together in connection with the operation of the plant. It is averred that said property was appraised at more than $97,000.00, but could never, since the assignment, have been sold for one-third of that sum.

It is clear, as we think, from the facts appearing in the record, that, in order that there should be sufficient realized out of the mortgaged property to pay appellee's debt, after first paying the prior lien in favor of the Marion Bank, it will be necessary to operate the factory until an advantageous private sale may be secured. Indeed, the assignee expressly admits that, "if said property had been sold at public sale, it would never have sold for sufficient to have paid said Marion Bank's mortgage, and there has been no way possible to obtain anything for said property to apply on plaintiff's [appellee's] said mortgage, except by selling the same at private sale, if it could be done."

There is no reflection upon the conduct of the assignee. He doubtless did the best that could be done in the management of the property committed to his

charge, paying off nearly $3,000 preferred liens. Although the voluntary assignment statutes do not contemplate that a trustee for the benefit of creditors should continue to operate a business as it was carried on before the assignment, yet the assignee in this case, with at least the tacit consent of all the creditors, continued the operation of the works until the bringing of this suit. We think it is shown that the assignee thus acted in the interests of the creditors. It was, however, at all times the privilege of any of the mortgagees to enforce the rights secured by mortgage, one of which was the right to have a receiver appointed to operate the plant, in case the value of the property was otherwise insufficient for the payment of the secured debts. Beach Rec. (Alderson's ed.), section 293; Smith Rec., section 232; 20 Am. and Eng. Ency. Law, 295, and note.

No right of the assignee is involved in the appointment of the receiver. He succeeded only to the rights of the owner of the property, subject to the incumbrances. Should there be a surplus of the proceeds of the mortgaged property after payment of the mortgage liens, such surplus will go to the assignee, to be added to the funds in his hands for distribution to creditors.

Judgment affirmed.